### FRIEDRICH MUSIC HOUSE *v.* HARRIS.

1. INNKEEPERS—LIEN—STATUTES—CONSTRUCTION—INTENT.

    Section 6947, 2 Comp. Laws 1915, giving the keeper of a hotel, inn, or boarding or lodging house a lien on the baggage and effects of a guest or boarder for food and lodging, *held,* from the association of the words "hotel or inn or boarding or lodging house" that the legislature had in mind business of a kindred and public nature.

2. REPLEVIN—LIENS—INNKEEPERS—CONDITIONAL SALE.

    Where the evidence showed that defendant in replevin proceedings kept one or two steady boarders in her family, but without any pretense or claim of running a boarding house, she was not the keeper of a boarding house within the meaning of section 6947, 2 Comp Laws 1915, giving the keeper of a boarding house a lien on the baggage and effects of a guest or boarder for food and lodging, and she was not entitled to hold the effects of a boarder as against the vendor who had retained title to the same.

Error to Kent; Brown, J. Submitted January 30, 1918. (Docket No. 83.) Decided March 27, 1918.

Replevin by the Friedrich Music House against Mrs. William Harris for the possession of a piano. Judgment for plaintiff. Defendant brings error. Affirmed.

*C. H. Gleason* (*Gleason & Lee,* of counsel), for appellant.

*Maynard, Freeland & Munshaw,* for appellee.

STONE, J. This is an action of replevin commenced in justice's court in the city of Grand Rapids for the alleged unlawful detention of one Hoffman piano, stool and scarf, and one talking machine with horn, also a quantity of phonograph records. The goods were taken on the writ. Defendant pleaded the general issue and gave notice of a lien on the property for the board of two ladies who were the owners of the property. Defendant had judgment for a return of the property before the justice, and the plaintiff took an appeal to the circuit court, and there, upon a trial before the court, without a jury, had judgment for the goods, and for six cents damages and costs. The defendant brings the case to this court by writ of error.

It appeared in evidence upon the trial in the circuit court that Julius A. J. Friedrich was a music dealer in the city of Grand Rapids. He sold one "Hoffman piano, stool and scarf," being a part of the property in question to Mrs. Belle Ely, December 26, 1913, for $165, on a down payment of $25, and then $5 per month. For this sum Mrs. Ely gave her promissory note, and at the same time signed a contract with Mr. Friedrich, by which he retained title until the property was paid for. This contract described Mrs. Ely's residence as "corner of Benjamin and Dunham," she agreeing not to permit the property to be "removed from said residence without the written consent" of the seller.

On April 13, 1914, said Friedrich sold to Jeannette Ely, daughter of Mrs. Belle Ely, who was living with her mother, one "Victor No. 31 Wood Horn." The purchaser made a down payment, and gave a prom-

issory note for the balance of $78.75 payable in monthly instalments of $5 each.  This note retained title to the horn until fully paid for, and provided that the property should not "be removed from Grand Rapids, Mich., without the written consent" of said Friedrich.  These notes, when this suit was begun, belonged to the plaintiff herein, and it demanded possession of the property replevined before suit was brought.  At the time suit was brought, there was no default in the payments due on either of said notes, and there was no breach of any of the terms of either contract, except in the case of Mrs. Ely, who had removed the piano, stool, and scarf from her residence without written consent of Mr. Friedrich.  About June 1, 1914, Mrs. Ely and her said daughter went to board with the defendant at her home, 922 Prince street, in said city, and took their things there with them, including all of the property replevined.  They both lived and boarded with defendant for upwards of five weeks, when they left defendant's house in her absence therefrom, and without her knowledge or consent took the greater portion of their things with them, but did not take any of the property described in the writ of replevin.  They were at that time owing defendant $40 for board.  For this sum defendant claimed a lien on the said property, as the keeper of a boarding house, and refused to deliver it to the plaintiff, until the board bill was paid.

It also appeared upon the trial that this suit was brought by plaintiff by authority of Mrs. Ely, who wanted plaintiff to get the property for herself and daughter in order that defendant's claimed lien thereon for their board might be defeated.

Upon the trial defendant testified:

"I have kept boarders for twelve years.  During the year preceding this, Mr. Frank was with me; he was there one and one-half years.  Mr. and Mrs. Jacobs

were there more than a year. They were not friends of mine, just simply wanted a private boarding house. Mr. and Mrs. Danforth boarded with me over a year. This was prior to the last year. Miss Ocobock also boarded with me the past year. She is no relation to me, came a perfect stranger. She boarded with me nearly two years. Pete Franken boarded with me eight months two years ago. I can accommodate only one or two at a time. I keep a boarding house for people that will pay their board. My mother-in-law boarded with me, also. Transients do not come there. I don't run an open house like that. I only have a few regular boarders. I don't hold myself out as keeping a public boarding house. I knew Mrs. Ely only three or four days before she came to board with me. She stayed there five weeks and three days."

Defendant's daughter, Amy Harris, testified:

"I am daughter of defendant and lived with her when Mrs. Ely boarded there. She and her daughter boarded there about five weeks, and owed mother $40 for board when they left, which they have never paid. My mother keeps a private boarding house, has kept one about twelve years, and has two boarders now, and when the Elys boarded there my grandmother also boarded there."

The above was all the testimony on the subject. Upon this testimony the trial court found as matter of law that defendant was not, during the time the Elys boarded with her, a boarding house keeper within the meaning of section 5317, 2 Comp. Laws (§ 6947, 2 Comp. Laws 1915).

Defendant proposed amendments to the findings which were refused, and exceptions were duly taken to such refusal.

The assignments of error allege error in the several findings both of fact and of law, and, further, that the findings of fact do not sustain the conclusions of law, and that each finding was against the clear weight of the evidence.

Under the undisputed evidence in the case, in fact

upon defendant's own testimony, we are of opinion that she was not a boarding house keeper within the purview of our statute. The statute provides:

"That whenever the keeper of any hotel, or inn, or boarding, or lodging house, shall receive into his hotel, or inn or boarding, or lodging house, any person as a guest or boarder or lodger, he shall have a lien upon, and a right to detain the baggage and effects of such guest or boarder, or lodger, to secure and compel payment of his customary charges for the food and lodging furnished such guest, or boarder, or lodger, and such lien may be enforced in the manner hereinafter prescribed."

A "boarding house," within the meaning of this statute, was well defined in *Cady* v. *McDowell*, 1 Lans. (N. Y.) 484, from which we quote as follows:

"A boarding house is not, in common parlance or in legal meaning, every private house where one or more boarders are kept occasionally only, and upon special considerations. But it is a *quasi* public house, where boarders are generally and habitually kept, and which is held out and well known as a place of entertainment of that kind. * * * A boarding house is as well known and as distinguishable from other houses, in every city and village in the country, as an inn or a tavern. It is a house where the business of keeping boarders generally, is carried on, and which is held out by the owner as a place where boarders are kept."

See, also, 8 C. J. p. 1132, and cases cited in notes.

See note to *Nance* v. *Piano Co.*, 128 Tenn. 1, as reported in Am. & Eng. Ann. Cas. 1914D, 839, Black's Law Dictionary, title, "Boarding House," 1 Words & Phrases, p. 815.

Although defendant claimed to have kept a boarding house 12 years, upon being interrogated she named only 10 persons who had boarded with her during that time, including Mrs. Ely and daughter, and her own mother-in-law; and she testified that she only accommodated one or two at a time.

We think from this record it appears that Mrs. Harris and her family were living on Prince street, during the period named and were doing what many other families are doing, in cities and towns, keeping one or two steady boarders; but without any pretense or claim of running a boarding house. The statute should be given a fair construction. The association of the words "hotel or inn or boarding or lodging house," shows that the legislature had in mind business of a kindred and public nature. The use of the words "customary charges," in the statute, implies an habitual and customary business.

It appears to us, therefore, that there is an insuperable reason why the defendant cannot prevail in the instant case. She was a stranger to the property in question, and the plaintiff, the bailor of the property, had, under the evidence, as to her, the right to the possession of the property.

The judgment of the circuit court is therefore affirmed.

BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred. OSTRANDER, C. J., and KUHN, J., did not sit.