In the Matter of MAX WULFSOHN, Appellant, *v.* JOHN BURDEN, as Inspector of Buildings of the City of Mount Vernon, Respondent.

Municipal corporations — zoning laws — constitutional law — police power — statute authorizing cities to regulate height and bulk of buildings, the area of open spaces, and to adopt zoning regulations — constitutionality of ordinances attacked by extraneous evidence on ground that they are confiscatory — burden on petitioner of overcoming presumption of constitutionality — exclusion of large apartment houses from residential districts justified — exercise of police power extends to so dealing with conditions as to promote the greatest welfare of the people — argument that ordinances limit the use and may depreciate the value of petitioner's premises not effective — regulation of height of apartment houses and of open area that shall surround them — additional provision that there shall be no display of advertising from street does not invalidate ordinance — reasonableness of regulation for set-backs and back yards — violation by proposed building of three regulations — petitioner to succeed must establish that each is so arbitrary and unreasonable as to be invalid.

1. By the statute in relation to cities (L. 1909, ch. 26, as amd.), broad authority amongst other things is given to such municipalities to regulate the height and bulk of buildings, to regulate and determine the area of yards, courts and open spaces and for such purposes to divide a city into districts and to adopt various other provisions classifying and regulating the use of land within its borders in the interest of the public health, safety and general welfare.

2. Where no claim is made that the Legislature has not properly conferred upon local authorities the right to exercise the powers enumerated in the statute but the constitutional validity of zoning ordinances adopted by a city is attacked by extraneous evidence on the ground that they are confiscatory, and a peremptory mandamus is sought to compel the issuance of a permit to build, the petitioner

has the burden of overcoming the presumption of constitutionality applicable to such ordinances by reference not only to facts of which we may take judicial notice but also facts appearing in the affidavits. He must demonstrate that, as matter of law, these regulations are unconstitutional and that there is no permissible interpretation of all of these facts which justifies the adoption of these ordinances as a reasonable exercise of the broad police power of the State.

3. In the exercise of police power, while the fundamental rule must be observed that there is some evil existent or reasonably to be apprehended which the police power may be invoked to prevent and that the remedy proposed must be generally adapted to the purpose, the limit upon conditions held to come within this rule has been greatly enlarged. The power is not limited to regulations designed to promote public health, public morals or public safety or to the suppression of what is offensive, disorderly or unsanitary but extends to so dealing with conditions which exist as to bring out of them the greatest welfare of the people by promoting public convenience or general prosperity.

4. The zoning authorities of the city of Mount Vernon were entitled to assume and the courts have found that the orderly and advantageous development of that city and the welfare of its citizens would be promoted by a fundamental division of the city into districts devoted respectively to business and residential purposes and it cannot properly be said, as matter of law, that a zoning regulation excluding large apartment houses from residential districts cannot be justified.

5. Having the power to establish residential districts, the zoning authorities of Mount Vernon had the power to make such classification really effective by adopting such regulations as would be conducive to the welfare, health and safety of those desiring to live in such a district and enjoy the benefits thereof, by excluding big apartment houses whereby the enjoyment of adjoining premises might be impaired, the character and safety of the district as a residential one destroyed and the value of property already devoted to private residences impaired.

6. It is not an effective argument against these ordinances, if otherwise valid, that they limit the use and may depreciate the value of petitioner's premises. That frequently is the effect of police regulation and the general welfare of the public is superior in importance to the pecuniary profits of the individual.

7. The zoning authorities, in any event, have the right to regulate the construction of apartment houses by restricting their height and prescribing the open area which shall surround them, to consider the different possibilities of apartment house construction and make

general rules to govern them, and it cannot be said, as matter of law, that the present zoning regulations are so unreasonable that they exceed the limits of discretion reposed in the zoning commission, where they provide that in the use of a lot in the A residential district for an apartment house or a hotel the height shall not exceed five stories and that there must be a " set-back " from each lot and street line of fifty feet, and in a B residential district of twenty-five feet, and that there must be left in the rear of the lot as used an open space in part graduated according to the depth of the lot and height of building.

8. An argument that because the provisions permitting the erection of apartment houses provide, in substance, that there shall be no display of advertising visible from any street, the zoning regulations are based upon unsustainable æsthetic considerations, cannot be upheld. The restriction referred to is a minor incident, the main regulations are of height and of open spaces and these provisions are not rendered invalid because consideration is given to appearance of buildings as a minor and auxiliary reason.

9. A complaint that the regulations for set-backs are unreasonable because they do not graduate such set-backs to the size of the building but require the same area for a small as for a large building is not available to petitioner. The only question which he is entitled to argue is that these set-backs are unreasonable in the case of a building four and five stories high and designed to accommodate nearly six hundred people.

10. Nor can it be successfully urged that an arbitrary discrimination is displayed in the matter of set-backs and rear yards between apartment houses and other buildings, all located in the same district. Upon examination of the zoning regulations it cannot be said as matter of law that the authorities acted arbitrarily in making the differentiation which they did between apartment houses and other buildings permitted in both A and B residential districts.

11. In any event the petitioner's proposed building violates three distinct and severable regulations — the one providing for open back yards, for set-backs of fifty feet in A residential districts and of twenty-five feet in B residential districts. He can only succeed by establishing, as matter of law, that each of these regulations is so arbitrary and unreasonable as to be invalid and it cannot be said that a requirement of twenty-five feet of open space between such an apartment house and adjoining property is an unreasonable protection.

*Matter of Wulfsohn* v. *Burden*, 214 App. Div. 824, affirmed.

(Argued October 9, 1925; decided November 24, 1925.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered July 16, 1925, which reversed an order of Special Term granting a motion for a peremptory order of mandamus to compel the defendant to approve plans and issue to the petitioner a building permit and denied said motion.

*J. Henry Esser* for appellant.   The answering affidavits offer no justifying reason recognized by the police power for the discriminatory and arbitrary provisions here before the court.   (*Mayor & Council of Wilmington* v. *Turk,* 129 Atl. Rep. 512; *City of Janesville* v. *Carpenter,* 77 Wis. 288; *Matter of Barker-Switzer,* 209 App. Div. 151; 238 N. Y. 624; *People ex rel. Wineburgh Adv. Co.* v. *Murphy,* 195 N. Y. 126; *Vernon* v. *Mayor & Council of Town of Westfield,* 124 Atl. Rep. 248; *Handy* v. *Village of South Orange,* 118 Atl. Rep. 838.)   The provisions here in question constitute an unlawful taking of petitioner's property, without due process of law and without compensation.   (Const. of U. S., art. 14; Const. of N. Y., art. 1, § 6; *City of St. Louis* v. *Hill,* 116 Mo. 527; *Buchanan* v. *Warley,* 245 U. S. 74; *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393.) Neither the Legislature, nor the municipality, has the power to establish arbitrary set-backs or building lines within private property, nor to prevent the owner from making a full legitimate use of his land subject only to such limitations as are dictated by the public health, safety and general welfare.   (*People ex rel. Dilzer* v. *Calder,* 89 App. Div. 503; *Matter of Hecht-Dann Co., Inc.,* v. *Burden,* 124 Misc. Rep. 632; *People ex rel. Lankton* v. *Roberts,* 90 Misc. Rep. 439; *Matter of Isenbarth,* 206 App. Div. 546; 237 N. Y. 617; 1 Lewis on Em. Dom. [3d ed.] § 227; 2 Dillon on Mun. Corp. § 695; *Matter of Opinion of the Justices,* 128 Atl. Rep. 181; *Val Fruth* v. *Board of Affairs of Charleston,* 84 S. E. Rep. 105; *St. Louis*

v. *Hill*, 116 Mo. 527; *Willison* v. *Cooke*, 130 Pac. Rep. 828; *Crawford* v. *City of Topeka*, 51 Kan. 756; *City of Grand Rapids* v. *Powers*, 14 L. R. A. 498; *City of Janesville* v. *Carpenter*, 77 Wis. 288; *Northrop* v. *Waterbury*, 81 Conn. 305.)   Under existing constitutional and statutory provisions in this State the provisions of zoning ordinances which rest solely upon æsthetic or economic bases cannot be upheld.   (*People ex rel. Wineburgh Adv. Co.* v. *Murphy*, 195 N. Y. 126; *Matter of Barker* v. *Switzer*, 209 App. Div. 151; 238 N. Y. 624; *Vernon* v. *Mayor & Council of Westfield*, 124 Atl. Rep. 248; *Lincoln Trust Co.* v. *Williams*, 229 N. Y. 313; *Isenbarth* v. *Bartnett*, 206 App. Div. 546; 237 N. Y. 617; *Matter of Opinion of the Justices*, 128 Atl. Rep. 181; *Stubbs* v. *Scott*, 127 Md. 86; *Spann* v. *Dallas*, 111 Tex. 350; *Stake* v. *McKelvey*, 301 Mo. 1; *People* v. *Chicago*, 261 Ill. 16; *Passaic* v. *Patterson Posting & Sign Co.*, 72 N. J. Law, 285; *Haller Sign Works* v. *Physical Culture School*, 249 Ill. 436; *Byrne* v. *Maryland Realty Co.*, 129 Md. 202.)   The set-back, or building line, and excessive rear yard provisions here involved, having no apparent relation to the accepted functions of the police power, it is the duty of the court to declare them invalid.   (*Mayor & Council of Wilmington* v. *Turk*, 129 Atl. Rep. 502; *State* v. *Harper*, 182 Wis. 148; *People ex rel. Wineburgh Adv. Co.* v. *Murphy*, 195 N. Y. 126; *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271; *Matter of Stubbe* v. *Adamson*, 220 N. Y. 459.)   The Legislature has not delegated to the city the power to enact the set-back building line and excessive rear yard provisions in question here.   (*Matter of Hecht-Dann Co., Inc.*, 124 Misc. Rep. 632; *Matter of Jacobs*, 98 N. Y. 98; *People* v. *Mark*, 99 N. Y. 377; *Wynehamer* v. *People*, 13 N. Y. 378; *Rensselaer, etc., R. Co.* v. *Davis*, 43 N. Y. 137; *New York, etc., R. Co.* v. *Kip*, 46 N. Y. 546; *Matter of Poughkeepsie Bridge Co.*, 108 N. Y. 483; *Fitzgerald* v. *Quann*, 109 N. Y. 441; *Sharpe* v. *Speir*, 4 Hill, 76; *New York, etc., R. Co.* v. *Central Union Tel. Co.*, 21 Hun, 261;

*People* v. *Wells,* 181 N. Y. 252; *State Water Supply Comm.*
v. *Curtis,* 192 N. Y. 319; *Matter of Simmons,* 206 N. Y.
577, 580; *Matter of McAneny* v. *Board of Estimate,* 232
N. Y. 377.)   The set-back and rear yard provisions in
question are arbitrary and legally unreasonable.   (*People
ex rel. Wineburgh Adv. Co.* v. *Murphy,* 195 N. Y. 126.)
The use of petitioner's property for apartment purposes,
being lawful and expressly permitted, the set-back pro-
visions in question are, on the face of the ordinance,
unlawfully   discriminatory.   (*Lincoln   Trust   Co.   v.
Williams,* 229 N. Y. 313; *People ex rel. Duryea* v. *Wilbur,*
198 N. Y. 1; *Vernon* v. *Mayor, etc., of Westfield,* 124
Atl. Rep. 248.)

   *Hugh M. Hewson, Corporation Counsel, Arthur M.
Johnson* and *Lester D. Stickles* for respondent.   The
learned court below erred on the questions of the burden
of proof and the quality of proof.   (*People ex rel. Knob-
lauch* v. *Warden,* 216 N. Y. 154; *People ex rel. Publicity
Leasing Co.* v. *Ludwig,* 218 N. Y. 540; *Yellow Taxicab Co.*
v. *Gaynor,* 82 Misc. Rep. 94; 159 App. Div. 888; *Waldorf
Hotel Co.* v. *City of New York,* 212 N. Y. 97; *Hartman*
v. *Collins,* 106 App. Div. 11; *Namm* v. *Carlin,* 182 App.
Div. 626; *Isenbarth* v. *Barnett,* 206 App. Div. 546.)   The
Zoning Ordinance, in the provisions attacked, is a proper
exercise of the police power.   (*Story* v. *N. Y. El. R. Co.,*
90 N. Y. 122; *Foster* v. *Scott,* 136 N. Y. 577; *People* v.
*Priest,* 206 N. Y. 274; *Health Department* v. *Trinity
Church,* 145 N. Y. 32; *People* v. *Havnor,* 149 N. Y. 195;
*Carthage* v. *Frederick,* 122 N. Y. 268; *People* v. *Klinck
Packing Co.,* 214 N. Y. 121; *People* v. *Griswold,* 213 N. Y.
92; *Matter of Viemeister,* 179 N. Y. 235; *People* v. *Brie-
secker,* 169 N. Y. 53; *People* v. *Cipperley,* 101 N. Y. 634;
*Mueller* v. *Oregon,* 208 U. S. 412; *Tenement House Depart-
ment* v. *Moeschen,* 179 N. Y. 325; 203 U. S. 583.)

   HISCOCK, Ch. J.   The appellant Wulfsohn is seeking
by peremptory mandamus to compel the respondent

Burden to approve plans and issue a building permit for an apartment house which he desires to erect in the City of Mount Vernon. The refusal to issue this permit, which has been sustained by the court, is based upon the fact that the proposed building will violate certain zoning regulations. Appellant challenges these regulations as unconstitutional and void and thus is framed the question of constitutionality on which we are to pass.

By the statute in relation to cities (Laws of 1909, ch. 26, as amended), of which Mount Vernon is one, broad authority amongst other things is given to such municipalities to regulate the height and bulk of buildings, to regulate and determine the area of yards, courts and open spaces and for such purposes to divide a city into districts and to adopt various other provisions classifying and regulating the use of land within its borders in the interest of the public health, safety and general welfare. While the appellant has made some question whether this statute authorizes a municipality like the City of Mount Vernon to adopt zoning regulations he does this rather faintly and the statute authorizes such action so clearly and broadly that we shall not take time to discuss this question but shall assume without discussion that it conferred the power upon the City of Mount Vernon to adopt the regulations which have been adopted, if reasonable.

The authorities of the municipality, acting under this statute, have made a comprehensive classification of its territory and have divided the same into six districts, A, B and C residential districts, A and B business districts, and industrial districts and have prescribed regulations applicable to the erection and use of buildings and lands in these various districts. We are only concerned with these regulations as they create, and regulate the erection of buildings and use of lands in, the first two districts. These fix the boundaries of these two districts, enumerate

the classes of buildings which may be erected therein and, as their substantial restrictions involved in this case, provide that in the use of a lot in the A residential district for an apartment house or a hotel the height shall not exceed five stories and that there must be a " set-back " from each lot and street line of 50 feet, and in a B residential district of 25 feet, and that there must be left in the rear of the lot as used (this not being confined to these particular buildings) an open space which is in part graduated according to the depth of the lot and height of building and which in the present case would be 90 feet in depth. They only affect new buildings and those which may be reconstructed. Appellant owns a lot situate at the intersection of two streets with a frontage on one of these of 100 feet and upon the other of 300 feet and located in part in the A residential district and partly in the B residential district.

No claim is made that the Legislature has not properly conferred upon local authorities the right to exercise the powers enumerated in the statute which has been cited. But we shall assume that these ordinances were adopted under a general legislative authority and that their constitutional validity was subject to attack by extraneous evidence (*Matter of Stubbe* v. *Adamson,* 220 N. Y. 459), and in accordance with this rule affidavits were presented upon appellant's motion for a mandamus in the efforts respectively to impeach and to sustain the validity of the regulations. While these affidavits probably do not greatly enlarge the scope of the facts of which we might take judicial notice in determining the validity of the ordinances from their face, there are some facts to which reference may properly be made.

As we understand them, the territory now included in these residential districts, and especially the A district, was before the adoption of the zoning regulations in question a residential district almost entirely devoted to and occupied by private one-family dwelling houses.

Therefore, the zoning regulations did not have the effect of working any revolution in the character and uses of the territory covered by them, but it is evident that it was their purpose to continue a character and purposes already established and to limit these districts and especially the A district to private residences and to buildings of a character which it was thought would not greatly impair the character of the district as a residential one, and to allow buildings such as hotels and apartment houses only under restrictions which it was thought would prevent them from endangering the health, safety and general welfare of those desiring to dwell in such a district. The water and sewage systems in the districts in question are so limited that they would be overtaxed if apartment houses such as appellant desires to erect were largely located in these districts and their construction will impair the value of surrounding property already devoted to private residential purposes. Since the ordinances were adopted they have been obeyed by substantially all builders. The plans filed by appellant for the apartment house which he desires to erect show that the building will be four and five stories in height covering, with the exception of narrow strips of open space, his entire lot and that it will accommodate on each floor 30 families or, in the aggregate, 144 families or, on an average of 4 persons to a family, nearly 600 people. The regulations in question will prevent him from using in the neighborhood of 50 per cent of his lot for an apartment house but would not restrict him in its use for many other purposes.

Under the circumstances of this proceeding already referred to, as appellant seeks to gain a permit to erect his apartment house by attacking the zoning regulations as confiscatory and unconstitutional, he has the burden of overcoming the presumption of constitutionality applicable to such ordinances by reference not only to facts of which we may take judicial notice but also facts

appearing in the affidavits.    He must demonstrate that, as matter of law, these regulations are unconstitutional and that there is no permissible interpretation of all of these facts which justifies their adoption as a reasonable exercise of the broad police power of the State.    If on any permissible interpretation of the facts, the court could say as a finding of fact that the ordinances could be reasonably adopted, appellant was not entitled to a peremptory mandamus but only to an alternative one, which he did not seek.

For the purpose of disposing of a minor objection to the ordinances hereafter referred to we shall consider the question first in the form of the query whether the zoning authorities would have had the power to create residential districts devoted to ordinary family residences and exclude therefrom altogether apartment houses of a typical character, for if they would have had this power of exclusion they would have a power of regulation broad enough to cover the restrictions here complained of.    (*People* v. *Rosenheimer*, 209 N. Y. 115.)    In support of such a regulation we think the zoning authorities could assume and the courts below could have found that the orderly and advantageous development of the City of Mount Vernon and the welfare of its citizens would be promoted by a fundamental division of the city into districts devoted respectively to business and residential purposes under which its dwellers might establish homes in the latter districts where they would be free from disturbing conditions and risks and deprivation of health conditions, such as abundant light and air, ordinarily incident to congested business districts; that in the residential districts of Mount Vernon municipal facilities for sewage and water were liable to be overtaxed if the erection of large apartment houses was permitted; that through the construction of apartment houses whereby there would be gathered a large number of people in the space ordinarily occupied by a single family there

would result a congestion of population increasing the dangers of traffic, especially to children, and multiplying the chances that through the carelessness of some individual fire and conflagration might be started or disease communicated and epidemics set on their way; that the advantages and value of property devoted to private residences would be impaired. And if we are right that such facts could be found or assumed we do not think that a court could say as matter of law that a zoning regulation excluding large apartment houses could not be justified. There would be no object in creating a residential district unless there were to be secured to those dwelling therein the advantages and that immunity from risks and danger which would ordinarily be considered the main benefits of such residence.

Of course zoning regulations are an exercise of the police power and as we approach the decision of this question we must realize that the application of the police power has been greatly extended during a comparatively recent period and that while the fundamental rule must be observed that there is some evil existent or reasonably to be apprehended which the police power may be invoked to prevent and that the remedy proposed must be generally adapted to that purpose, the limit upon conditions held to come within this rule has been greatly enlarged. The power is not limited to regulations designed to promote public health, public morals or public safety or to the suppression of what is offensive, disorderly or unsanitary but extends to so dealing with conditions which exist as to bring out of them the greatest welfare of the people by promoting public convenience or general prosperity. (*Bacon* v. *Walker*, 204 U. S. 311, 317, 318.)

Being designed to promote public convenience or general prosperity as well as public health, public morals or public safety the validity of a police regulation must depend upon the circumstances of each case and the character of the regulation for the purpose of determining whether

it is arbitrary or reasonable and whether really designed to accomplish a legitimate public purpose. (*C., B. & Q. Ry. Co.* v. *Drainage Commrs.*, 200 U. S. 561.)  The field of regulation constantly widens into new regions. The question (of regulation) in a broad and definite sense is one of degree.  Changing economic conditions, temporary or permanent, may make necessary or beneficial the right of public regulation. (*People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429; affd., in principle, 257 U. S. 665.) While the validity of police regulation certainly is not to be rested simply upon popular opinion it has been said that it has been " put forth in aid of what is sanctioned by· usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." (*Noble State Bank* v. *Haskell*, 219 U. S. 104, 575.)

Acting in accordance with these general principles courts on the whole have been consistently and sensibly progressive in adjusting the use of land in thickly populated districts to the necessities and conditions created by congested and complex conditions by upholding as a constitutional exercise of the police power zoning ordinances passed under State authority to regulate the use of land in urban districts.  What was once a matter of voluntary submission to restrictive covenants in grants has become a matter of compulsory obedience to ordinances having the force of statutes.  It has come about that 40 States have passed laws authorizing zoning ordinances which in one form and another had, in January, 1925, been adopted by 320 municipalities.  Commencing, generally speaking, where restrictive covenants commonly stopped,·with the exclusion from residential districts of factories and business buildings, these regulations have developed until as in the present case they create residential districts in a large sense limited to private dwellings as distinguished from hotels and apartment houses.  Thus far they have been sustained as being conducive to

public health, safety and morals. With few exceptions courts have not been ready to say that they might be sustained merely because they preserved the æsthetic appearance of a private residential district and prevented it from being blotched by the erection of some incongruous structure whereby the value of all neighboring property was impaired. The Supreme Court of the United States has, however, gone so far as to approve in substance the views of the Massachusetts Supreme Court that æsthetic considerations might be considered as auxiliary of what thus far have been regarded by the courts as more effective and sufficient reasons. (*Welch* v. *Swasey,* 193 Mass. 364; *Welch* v. *Swasey,* 214 U. S. 91, 108.)

In attempting to apply all of these principles to the present case we deem it unnecessary to consider the proposition that zoning authorities may establish residential districts. This court has so definitely approved that proposition that we may take its decision as a starting point in the consideration of the further questions now before us. (*Lincoln Trust Co.* v. *Williams Bldg. Corp.,* 229 N. Y. 313.)

Having the power as we thus assume to establish residential districts it seems to us that the zoning authorities of Mount Vernon had the power to make such classification really effective by adopting such regulations as would be conducive to the welfare, health and safety of those desiring to live in such a district and enjoy the benefits thereof as we ordinarily conceive them. Outside of large cities where more or less congestion is inevitable, we ordinarily think of a residential district as devoted to private homes rather than to large commercial buildings. Such was apparently the character of the territory here involved before the zoning regulations were adopted. The primary purpose of such a district is safe, healthful and comfortable family life rather than the development of commercial instincts and the pursuit of

pecuniary profits. Such life goes on by night as well as by day. It includes children as well as people of mature judgment and is housed in buildings which are not ordinarily of that character most designed to resist conflagrations and located where fire protection is scantier and less effective than it would be elsewhere. (*Welch* v. *Swasey*, 214 U. S. 91, 107.)

Therefore it seems to us quite in accordance with the decisions and principles to which we have referred that zoning authorities should have the right in a residential district to promote these purposes and to protect the people desiring to enjoy these conditions by excluding big apartment houses like the one proposed by appellant whereby the enjoyment of light and air by adjoining property would be impaired, the congestion and dangers of traffic be augmented on streets where children might be and the dangers of disease and fires would be increased to say nothing of other things such as the destruction of the character of the district as a residential one and the impairment in value of property already devoted to private residences.

This view has been taken by the courts of several States and to it we give our adherence, notwithstanding the fact that courts of other States have decided otherwise. (*Matter of Opinion of Justices*, 234 Mass. 597; *Brett* v. *Building Commr.*, 250 Mass. 73; *Spector* v. *Building Inspector*, 250 Mass. 63; *State ex rel. Beery* v. *Houghton*, [Minn. Sup. Ct.] 204 N. W. Rep. 569; *Town of Windsor* v. *Whitney*, 95 Conn. 357; *City of Des Moines* v. *Manhattan Oil Co.*, 193 Ia. 1096; *Miller* v. *Board of Pub. Works*, [Cal. Sup. Ct.] 234 Pac. Rep. 381; *West* v. *City of Wichita*, [Kan. Sup. Ct.] 234 Pac. Rep. 978; *Kahn Bros.* v. *Youngstown*, 25 Ohio N. P. [N. S.] 2; *State ex rel. Carter* v. *Harper*, 182 Wis. 148; *State ex rel. Civello* v. *City of New Orleans*, 154 La. Ann. 271.) In addition we think that this view was impliedly adopted in the case of *People ex rel. Rosevale Realty Co., Inc.,* v. *Kleinert* (237 N. Y. 580),

decided by this court without opinion and wherein a writ of error was dismissed by the United States Supreme Court by decision rendered June 8, 1925.

It is not an effective argument against these ordinances, if otherwise valid, that they limit the use and may depreciate the value of appellant's premises. That frequently is the effect of police regulation and the general welfare of the public is superior in importance to the pecuniary profits of the individual. (*Spector* v. *Building Inspector*, 250 Mass. 63, 70.)

But even if it should be thought that zoning authorities would not have the right to protect the health, safety and welfare of those desiring to live in a residential district by excluding apartment houses and which power of exclusion if possessed would give the right to restriction, it seems to us quite clear that they have the right to regulate the construction of apartment houses as has been done by the zoning regulations now presented to us for consideration. These regulations restrict the height of an apartment house and prescribe the open area which shall surround it. It is to be borne in mind that there is nothing otherwise restricting the size of such a building. While in the present case the desire is to erect one on a lot of somewhat limited dimensions there is no legal or practical bar which would prevent a person from combining two or three lots and putting up an apartment house much larger than the one which appellant desires to erect. The zoning authorities had the right to consider the different possibilities of apartment house construction and make general rules which would govern them. When we consider this we do not think the restrictions which have been adopted can be said as matter of law to be so unreasonable that they exceed the limits of discretion reposed in the zoning commission and approved by the court below. All of the reasons which we have given tending to sustain the authority of the zoning commission to exclude apartment houses

from such a residential district apply with even more force to the restrictive provisions regulating height and air space. The open spaces not only tend to minimize the danger of fire to adjoining buildings and thus a spreading conflagration, but they also afford a greater opportunity for access by fire departments to a burning building and thus increase the possibility of successfully stopping a conflagration before it spreads to other buildings.

So much for the substantial question involved and we then come to certain subordinate claims made by appellant.

Because the provisions permitting the erection of apartment houses provide in substance that there shall be no display of advertising visible from any street, the argument is made that the zoning regulations are based upon æsthetic considerations and, therefore, not sustainable. If we are right that the erection of apartment houses might be altogether prohibited it might at least be argued that as a condition of permitting their erection the restriction in question might be imposed. But the restriction of advertising matter referred to in this case is a minor incident; the main regulations are of height and of open spaces and these provisions are not rendered invalid because consideration is given to appearance of buildings as a minor and auxiliary reason. (*Welch* v. *Swasey, supra.*)

Appellant complains that the regulations for set-backs are unreasonable because they do not graduate such set-backs to the size of the building but require the same area for a small as for a large building. Such an argument is not available to him. The only question which he is entitled to argue is that these set-backs are unreasonable in the case of a building four and five stories high and designed to accommodate nearly 600 people. It will be time enough to consider whether they should not be reduced in the case of a smaller building when somebody

desiring to erect such smaller building complains of them as unreasonable.

Then it seems to be urged that an arbitrary discrimination is displayed in the matter of set-backs and rear yards between apartment houses and other buildings, all located in the same district. When we keep in mind that while apartment houses may be constructed with a height of five stories in A residential districts while other buildings are restricted to a height of two and one-half stories and that all non-residential buildings other than apartment houses and hotels are subject to regulations calling for open rear yards and set-backs of some extent, we think that it cannot be said as matter of law that the zoning authorities acted arbitrarily in making the differentiation which they did between apartment houses and other buildings permitted in both A and B residential districts. An examination of the zoning regulations shows that the other buildings permitted in A residential districts other than one-family residences are of such an entirely different character than a large apartment house that it is obvious that different regulations might properly be prescribed for the others. This particular proposition of appellant's is presented for him most favorably by the provisions allowing the erection in B residental districts of hospitals and sanitariums for non-contagious diseases, dispensaries and charitable institutions except correctional institutions, and public and semi-public buildings. We think, however, that in the case of these buildings there was a clear basis for difference in regulations. Their height was very limited, the erection of these institutional buildings we know, as a matter of common observation, would be limited, the observation and watchfulness for contagious diseases would be much greater and more systematic than in an apartment house separated into the occupation of many different families, and the probability of fire in one of these institutions or in a

public building usually not occupied at night would be much less than in a building which was subject to accidents arising from the carelessness of any one of a great number of people and not apt to be detected by any systematic watchfulness.

In conclusion it is to be kept in mind that appellant's proposed building violates three different regulations — the one providing for open back yards, for set-backs of 50 feet in A residential districts and of 25 feet in B residential districts. In our opinion these provisions are so distinct and severable that one regulation might survive even though others did not. Therefore, appellant can only succeed by establishing as matter of law that each of these regulations is so arbitrary and unreasonable as to be invalid. It would not be enough for him to establish for instance that a set-back of 50 feet on a large apartment house such as he proposes to erect is arbitrary and unreasonable, but he must go farther and establish that a set-back even of 25 feet is invalid because of its arbitrary and unreasonable character. If we have been right in our reasoning it cannot be held as matter of law that any of these regulations are so arbitrary and unreasonable as to be invalid. But certainly it seems to us that a requirement of 25 feet of open space between an apartment house such as the one proposed and adjoining property cannot be said to be an unreasonable protection against some of the dangers to which we have referred.

Therefore, for these reasons, we are led to the conclusion that the order should be affirmed, with costs, and appellant's application denied.

CARDOZO, POUND, MCLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Order affirmed.