OPINION OF THE COURT
Seymour Rotker, J.
On September 11, 1981 the People moved the case against defendant for trial before this court sitting as a trier of the facts and the law. Testifying on behalf of the People was Police Officer Andrew Petriello of the New York City Police Department. Officer Petriello testified that on June 28, 1981, while on radio motor patrol duty with a brother officer, at about 12:15 in the afternoon, he heard a loud noise which he characterized as a motorcycle being operated in the vicinity of 73rd Avenue and Clear-view Expressway in Cunningham Park, Queens, New York. He positioned his radio motor patrol car to intercept the defendant. Officer Petriello exited his vehicle while in uniform and observed the defendant operating the motorcycle which was headed directly at him and the patrol car. The officer testified that the motorcycle had no vehicle *634 plate and the defendant was not wearing a helmet. When the defendant came close to the officer, Officer Petriello waved him down in order to check for further vehicle and traffic infractions and to issue summonses for failure to have the vehicle registered. The defendant made a sharp turn after looking in the officer’s direction and drove his motorcycle away from where the officer was standing. The motorcycle almost struck the radio motor patrol- car and Officer Petriello grabbed the motorcycle. Tfre police officer heard the gear of the vehicle engage and it picked up speed with the officer holding on. The officer was dragged for about 100 feet before he was able to overturn the motorcycle. The defendant was placed "under arrest and charged with felonious assault, resisting arrest and six Vehicle and Traffic Law violations: to wit, operating a motor vehicle without a license; operating an uninsured motor vehicle; operating a vehicle without registration; operating a vehicle that was uninspected; failing to obey traffic control signals, and failing to comply with, a lawful order of a policeman. Defendant was also charged with resisting arrest.
The felony charge was reduced to the misdemeanor of assault, third degree. The officer sustained injuries which caused substantial pain, suffering and disability, and which necessitated hospital treatment.
The defendant testified on his own behalf claiming that he did not see the officer and was not aware that the officer had grabbed on to the “dirt bike” he was operating, until the officer had actually grabbed on to said vehicle, and that he had no intention of disobeying the officer or fleeing from him.
No proof was adduced by the People as to the exact nature of the vehicle being operated by the defendant. It was characterized in testimony as a “motorcycle” or a “dirt bike”. Accordingly, we must go to the Vehicle and Traffic Law in order to determine whether or not the vehiclb operated by the defendant Was cognizable by said law as one which should be registered, etc. Section 121-b of the Vehicle and Traffic Law defines a “limited use motorcycle” as one having a maximum performance speed of not more than 20 miles per hour and calls said vehicle a class C *635 limited use motorcycle. Since there was no testimony as to the maximum operational performance of the motorcycle, the defendant must receive the benefit of the category of the vehicle he was operating wherein the requirements are less stringent than for the use and operation of a class A or B motorcycle. One may operate a limited use class C vehicle only when he has a valid driver’s license or learner’s permit which permits operation of a motor vehicle or passenger automobile. (Vehicle and Traffic Law, §2266.) No motor vehicle may be operated on a public highway without first being registered. (Vehicle and Traffic Law, §401.) A motor vehicle is defined as any vehicle operated or driven upon a public highway which is propelled by any power other than muscular power. (Vehicle and Traffic Law, § 125.) No person may operate a limited use vehicle on a public highway without same being registered. (Vehicle and Traffic Law, §2261; emphasis ours.) The plates of a limited use vehicle must be displayed. (Vehicle and Traffic Law, §2264.) No insurance is required for a class C limited use vehicle, nor does such vehicle have to be inspected. (Vehicle and Traffic Law, §§ 2266, 2265, subd 2, par [b].) A public highway is defined as “[a]ny highway, road, street, avenue, alley, public place, public driveway or any other public way”. (Vehicle and Traffic Law, § 134.)
It is apparent that unless Officer Petriello had a right to stop the defendant and issue a summons to him, or in the alternative, place him under arrest for violating provisions of the Vehicle and Traffic Law his action in seeking to restrain the defendant and the injuries he sustained thereby, could not be chargeable to the defendant without a clear showing of attenuation, nor could there be a “resisting arrest.” (People v Ingle, 36 NY2d 413; People v Cantor, 36 NY2d 106.)
A police officer has a right to enforce the Vehicle and Traffic Law through the issuance of a summons or, where a violation is noted, may arrest the violator (CPL 140.10). The question now presented is whether the operation of a class C limited use vehicle in a park area constitutes a violation of any of the Vehicle and Traffic Law provisions with which the defendant was charged. Subdivision (b) of *636 section 306 (uninspected vehicle), subdivision 1 of section 319 (uninsured vehicle), section 401 (unregistered vehicle) and subdivision 1 of section 509 (unlicensed operator) of the Vehicle and Traffic Law apply to vehicles and individuals operating vehicles on “public highways”. Sections 1110 (disobeying road markings) and 1102 (failure to comply with lawful orders of a police officer) of the Vehicle and Traffic Law apply to vehicles being operated on a “highway or private road.” Section 118 of the Vehicle and Traffic Law defines “[h]ighway” as “[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel.” Accordingly, the definition of “highway” is rather strict in application, while that of “public highway” is considered rather broad; the latter has been held not to apply where the size and restricted use of a private parking lot would preclude its being described as a “public way”. (People v Thew, 44 NY2d 681, 682.) From the evidence adduced, the defendant in operating his motorcycle did not specifically disobey road markings or fail to comply with an officer’s direction which occurred in areas marked by specific boundaries open to the use of the public for purposes of vehicular travel as defined by section 118 of the Vehicle and Traffic Law. The defendant was operating his motor vehicle over areas wherein vehicular traffic would-normally not be operated and thus he was not in violation of sections 1102 and 1110 of the Vehicle and Traffic Law.
The other infractions involve operation of a vehicle by a person on a public highway. As Black’s Law Dictionary notes, where the land belongs to the public, a “via publica”, or “public highway” is established. For this principle, Black’s cites no less an authority than Justinian. (Black’s Law Dictionary [4th ed], p 1737.) Furthermore, if the property is one in which the public has a “general right of passage” its character is sufficiently public so as to be included within the definition of public highway for the purposes of the Vehicle and Traffic Law. (See People v Thew, supra; People v County of Westchester, 282 NY 224, 228.) Certainly the use of a park by the general public renders the character essentially one that is public in *637 nature. It is in the interest of the public that motor vehicles within parks must be regulated in the interest of public safety owing to the public nature of parks. To hold otherwise, though park areas may not have roadways going through them for purposes of vehicular traffic, would be to ignore the requirements of public safety for those users of public lands. Section 435 of the New York City Charter empowers the police to “restrict the movement of vehicular and pedestrian traffic for the *** proper protection of human life and health”. Accordingly, it is in the interest of human life and health that the use of motor vehicles or motorcycles in the parks be restricted to those persons properly licensed whose vehicles are properly registered.
It has been observed by the courts since the appearance of the motor vehicle that such a vehicle “creates, unless managed by careful and competent operators, a most serious danger”. (People v Rosenheimer, 209 NY 115, 121.) The right of the State to protect the safety and welfare of its citizens, through regulation, is a fundamental one. (Matter of Wulfsohn v Burden, 241 NY 288.) The exercise of police power for the protection of the lives of the inhabitants of the State is valid. (Fougera & Co. v City of New York, 224 NY 269, 280.) Specific regulations governing the use of motor vehicles in parks have been upheld by the Court of Appeals. (Commissioners of Palisades Interstate Park v Lent, 240 NY 1.) In the instant case, there are no supplemental regulations at issue — merely the “ordinary” regulations required under the Vehicle and Traffic Law that a motor vehicle operator be licensed and the vehicle be registered.
To sustain the defendant’s conviction for the crime of assault in the third degree, the only theory which may be used to convict the defendant is that he recklessly caused physical injury to another person. The defendant’s conduct must be such that he was aware of and consciously disregarded a substantial and unjustifiable risk. (Penal Law, § 15.05, subd 3.) The risk under this definition must be a gross deviation from the standard conduct a reasonable person would observe. The testimony in this case revealed that, notwithstanding the fact that the officer attempted to seize the defendant who was attempting to flee, by grab *638 bing on to his motorcycle, defendant shifted gears and accelerated the motorcycle, dragging the officer over 100 feet. Since the officer had the right to issue a summons or arrest the defendant for a Vehicle and Traffic Law infraction, the officer’s conduct was lawful and this court finds that the defendant’s conduct was reckless within the meaning of subdivision 2 of section 120.00 of the Penal Law.
Based upon all of the credible testimony, this court finds the defendant guilty of violation of subdivision 1 of section 509 and section 401 of the Vehicle and Traffic Law and section 120.00 of the Penal Law. It has been held that resisting arrest, when contemporaneously charged with assault, resulting in injury to a police officer, is subsumed in the assault charge. (People v Lett, 67 AD2d 1077.) The defendant is found not guilty of violation of section 205.30 of the Penal Law, and subdivision 1 of section 319, section 1102, subdivision (b) of section 306 and section 1110 of the Vehicle and Traffic Law.