George Tilzer, J.
In this action for declaratory judgment and injunction, the defendants move to dismiss the complaint under rule 113 of the Buies of Civil Practice. The action was instituted by the plaintiff to declare illegal and unconstitutional an amendment to the zoning law of the City of New York known as CP 10780, unanimously adopted by the City Planning Commission on June 2, 1954, and unanimously approved by the Board of Estimate on June 11, 1954. The injunction seeks to restrain the acting borough superintendent of the Borough of The Bronx from issuing a permit to erect any building under the provisions of that amendment.
All the parties to this action agree that there are no issues of fact remaining and that the sole issue undecided. in this proceeding is one of law. Consequently the parties seek a final determination.
From the complaint, affidavit and the stipulation of facts agreed upon by all the parties to this action, the following facts appear:
The property involved in this action is located at the southwest corner of Biverdale Avenue and West 238th Street, in the county of The Bronx, and is owned by the defendant Zelnik. This is vacant, unimproved property. The plaintiff is the owner of a co-operative apartment building located on the north side of West 238th Street which occupies the entire block from West 238th Street to West 239th Street and from Biverdale Avenue to Henry Hudson Parkway.
On May 22, 1953, the defendant Zelnik addressed a communication to the City Planning Commission in which he requested a change of the use zone regulating the area where his property is located and suggesting that it be changed from “ residence use” district to “business use” district. After investigation and hearings by the planning commission, the commission decided that the property involved required that the residence use be changed to a “restricted retail use”. *149 This change was submitted to the Board of Estimate, which resolution failed to secure the unanimous vote necessary, and therefore the attempt to change the use district failed without prejudice.
The City Planning Commission then reconsidered the entire matter and after a number of public hearings unanimously adopted the zoning amendment known as CP 10780, the subject matter of this controversy. The new resolution differed from the defeated resolution (CP 10138) in that the change agreed upon was from “ residence ” to “ local retail ” and the area involved was smaller than originally submitted. The difference between the defeated resolution use (restricted retail) and “ local retail ” is that a “ local retail ” use designation permits stores on the ground floor but no commercial" development on the upper floors; whereas in a restricted retail district generally commercial uses can be had in the entire building. It is to be recalled that the defendant Zelnik had originally in his letter requested a change from residence use to business use. This new resolution by the planning commission was unanimously adopted by the Board of Estimate on June 11, 1954.
The plaintiff urges that the zoning amendment was adopted in violation of section 201 of the New York City Charter and section 200-2.0 of the Administrative Code of the City of New York, and is therefore illegal, unconstitutional and void. Supporting this contention the plaintiff asserts that the amendment constitutes “spot zoning”. The defendants allege that the amendment was not illegal, unconstitutional or void, and did not constitute spot zoning, and urge that the City Planning Commission properly initiated the proceedings under section 200 of the charter and that it was justified in treating this matter under section 200 and not under section 201, as contended for by the plaintiffs.
Section 200 provides in part as follows: “the commission may upon its own initiative at any time or upon application as provided in section two hundred one, adopt a resolution for any such purpose subject to the limitations provided by law.”
Section 201 provides: “ Applications for changes in resolutions or regulations referred to in the preceding section may be filed by any taxpayer with the commission only during the period from the first day of April to the thirtieth day of April, both inclusive, in any year. The commission may consider and act upon such applications only during the period beginning on the fifth day of May and ending on the thirtieth day of June, both inclusive, of each year, and may during such *150 period hold public hearings thereon, notice of which shall be given in the same manner as provided in the preceding section.”
The fundamental difference between sections 200 and 201 is that the commission under section 201 must act on all formal applications for zoning between May 5 and June 5 of each year, and the applications must be filed during the preceding month of April of that year. In the instant case the zoning change was made in October and November, 1953.
The sections differ also in that under section 201 the application must be by a formal application on forms provided and supplied by the planning commission, whereas under section 200 the commission may upon its own initiative at any time adopt such a resolution.
It is, therefore, apparent that under section 200 there are no limitations as to time, whereas under section 201 the application must be brought during the month of April and must be decided upon between the 5th day of May and the 30th day of June.
The plaintiff relies solely on the fact that this matter was first called to the planning commission’s attention by letter dated May 22, in which the defendant Zelnik sought a change of the zoning regulation. The plaintiff, therefore, asserts that this letter must be treated as a formal application under section 201, and that the planning commission was without power to consider it under section 200. A full appreciation of the duties imposed upon the planning commission and the powers vested in it by the enactment of sections 200 and 201 does not substantiate the plaintiff’s position.
In Rosenzweig v. Crinnion (126 N. Y. S. 2d 692) a case very similar to the case at bar, the court held that despite the fact that the need for a zoning change was first brought to the attention of the planning commission by formal application of interested property owners, this did not foreclose the right of the planning commission to consider the application under section 200.
The court in its opinion wrote in part as follows:
“ The difficulty with Putter’s claim of invalidity is that the zoning resolution was not adopted pursuant to Section 201 of the Charter but rather pursuant to a provision of Section 200 of the Charter which permits the Commission upon its own initiative to adopt resolutions for zoning changes. Section 200 provides that: ‘ Any existing resolution or regulation * * * may be amended, repealed or added to only in the following manner: the commission may upon its own initiative at any time or upon application as provided in section two hundred *151 one, adopt a resolution for any such purpose ’. (Italics supplied.)
“ It is to be noted that if the Commission acts upon its own initiative it may do so ' at any time ’. Regardless of whether the Commission acts upon its own initiative or upon petition authorized by Section 201, it must hold a hearing preceded by ten days publication of notice. The Commission points out the fact that its attention was brought to the need for a zoning change by a petition submitted to it by property owners is not necessarily inconsistent with the Commission’s having* acted upon its own initiative, under Section 200 of the charter, in proposing a zoning change.” (Pp. 699-700.)
The words “ may upon its own initiative at any time ” cannot be given such a narrow and restricted interpretation as contended for by the plaintiff. The word “ initiative ” has been defined as “an introductory step or action; a first move; beginning; start” (Funk & Wagnalls New Standard Dictionary).
The legislative intent to be given to the words ‘ ‘ at any time ” indicates that it be construed broadly, liberally, and with a view towards accomplishing the purposes intended. There is no definite requirement that the idea or request for change must have originated within the commission. The legislative purpose is satisfied when the commission takes definite action on a proposition, whether the idea or suggestion emanates or originates with the commission or is brought to its attention by some person or in any manner.
Consequently, the court concludes the plaintiff’s position is technical, specious and without foundation in fact or law. The commission properly considered this change under section 200.
Counsel for the plaintiff submits a learned dissertation on the law affecting ‘ ‘ spot zoning ’ ’ and concludes with the brief statement that the facts recited by him in his brief clearly support his theory that this constitutes spot zoning. I have carefully studied the facts alluded to by him, but I am unable to come to the same conclusion.
There is no direct proof to establish that the commission’s act was arbitrary and capricious or that it constituted spot zoning. The plaintiff relies solely on the following circumstances to maintain his position:
1. The commission’s attention was first directed to the need of change by the defendant Zelnik.
2. That the change benefits the defendant Zelnik and is detrimental to the plaintiff’s property.
*152 Having already disposed of the plaintiff’s first contention, the court now proceeds to inquire into the action of the planning commission as to whether it was designed to promote a comprehensive plan or scheme of zoning or whether it was designed solely for the benefit of the defendant and constitutes spot zoning. Counsel for the plaintiff quotes at length from an article appearing in the New York Law Journal on July 7 and 8, 1950. Had counsel continued on, he would have found that the excerpt immediately following more adequately approximates the situation in the case at bar.
“ Each case depends on its particular facts and circumstances, and no hard or fast rule that so-called ‘ spot zoning ’ is illegal has been established. The mere fact, however, that an amendment to a zoning regulation zones a small area at the request of a single owner does not of itself make the result improper spot zoning, and considerations of public health and welfare may sometimes justify such a change as a part of a comprehensive, well-considered plan in the public interest. Where a zoning ordinance has been in effect for many years, during which time numerous physical, economic and social changes in the locus have taken place, and where it is shown that no property owner in the community will be hurt by lowering the restrictions as to certain property or properties, while if they are not lowered the owner or owners will suffer substantial loss, then they should be lowered. Especially is this true where there is no showing that the zoning plan of the municipality will be jeopardized or materially affected by their lowering.
“ The fact that there has been included in a zoning district certain parcels of property on which, at the time of the adoption of the ordinance, there exists non-conforming uses, does not necessarily destroy the character of such district for more restricted purposes. Such non-conforming uses by a property owner, or of several of them, do not per se authorize a change in the ordinance for another property owner adjacent to or in the vicinity of such non-conforming use for a similar use or other use prohibited in such district.
‘‘ Under comprehensive zoning laws, shopping and business centers at convenient locations in residence districts generally are permissible. They do not constitute invalid ‘ spot ’ or ‘ island ’ zoning where their existence, location and extent are reasonable (Wilkins v. City of San Bernardino, 29 Cal., 2, 332, 175 P., 2d, 542; Rosenthal v. Town of Marblehead, 316 Mass., 124; Bishop v. Board of Zoning Appeals of New Haven, 133 Conn., 614; Marshall v. Salt Lake City, 141 P., 2d, 704, Utah; *153 Bartman v. Zoning Commission of Bridgeport, 63 A., 2d, 308, Conn., 1949).” (Spot Zoning by Crolly, N. Y. L. J., June 7, 1950, p. 2016, col. 1.)
The courts have held that the financial situation or pecuniary hardship of a single owner does not warrant the exercise of power to affect the property of other owners and the public generally (Matter of Young Women’s Hebrew Assn. v. Board of Stds. & Appeals, 266 N. Y. 270, cited with approval in Matter of Ward v. Murdock, 247 App. Div. 808). In Matter of Wulfsohn v. Burden (241 N. Y. 288, 302) the Court of Appeals held in part as follows: “ It is not an effective argument against these ordinances, if otherwise valid, that they limit the use and may depreciate the value of appellant’s premises. That frequently is the effect of police regulation and the general welfare of the public is superior in importance to the pecuniary profits of the individual.”
It is a fundamental rule of evidence that circumstances equally consistent with several hypotheses prove neither, and the party having the burden must fail (Ursaner v. Metropolitan Life Ins. Co., 274 App. Div. 77). To prove a fact by circumstantial evidence, the circumstance from which the inference is to be drawn must be established by direct proof (People v. Razezicz, 206 N. Y. 249; Lopez v. Campbell, 163 N. Y. 340; Ruppert v. Brooklyn Heights R. R. Co., 154 N. Y. 90).
In Lopez v. Campbell (supra, pp. 347-348) the court said: “ While a material fact may be established by circumstantial evidence, still, to do so the circumstances must be such as to fairly and reasonably lead to the conclusion sought to be established, and to fairly and reasonably exclude any other hypothesis. Where the evidence is capable of an interpretation which makes it equally consistent with the absence as with the presence of a wrongful act, that meaning must be ascribed to it which accords with its absence. In other words, it can only be established by proof of such circumstances as are irreconcilable with any other theory than that the act was done. As has been said: ‘ Insufficient evidence is, in the eye of the law, no evidence.’ ”
In Rodgers v. Village of Tarrytown (302 N. Y. 115, 121) the pertinent principles of law are summarized as follows: “ In that connection, we recently said (Shepard v. Village of Skaneateles, 300 N. Y. 115, 118): ‘ Upon parties who attack an ordinance * * * rests the burden of showing that the regulation assailed is not justified under the police power of the state by any reasonable interpretation of the facts. " If the validity of the legislative classification for zoning purposes *154 be fairly debatable, the legislative judgment must be allowed to control.” (Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 388; see, also, Town of Islip v. Summers Coal & Lbr. Co., 257 N. Y. 167, 169, 170; Matter of Wulfsohn v. Burden, 241 N. Y. 288, 296-297.) ’ ”
The court also held (pp. 123-124) as follows: “ The charge of illegal ‘ spot zoning ’ — levelled at the creation of a Residence B-B district and the reclassification of defendant’s property — is without substance. Defined as the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners (see Harris v. City of Piedmont, 5 Cal. App. 2d 146, 152; Cassel v. Mayor & City Council of Baltimore, 73 A. 2d 486, 488-489 [Md.]; Board of Co. Comrs. of Anne Arundel Co. v. Snyder, 186 Md. 342, 345-346; Leahy v. Inspector of Bldgs, of New Bedford, 308 Mass. 128, 134; Page v. City of Portland, 178 Ore. 632, 641; Weaver v. Ham, 232 S. W. 2d 704, 709 [Tex.]; see, also, Yokley, Zoning Law and Practice [1948], § 85; cf. People v. Cohen, 272 N. Y. 319), ‘spot zoning ’ is the very antithesis of planned zoning. If, therefore, an ordinance is enacted in accordance with a comprehensive zoning plan, it is not ‘ spot zoning, ’ even though it (1) singles out and affects but one small plot (see, e.g., Shepard v. Village of Skaneateles, supra, 300 N. Y. 115) or (2) creates in the center of a large zone small areas or districts devoted to a different use. (See Nappi v. La Guardia, supra, 295 N. Y. 652, affg. 269 App. Div. 693, affg. 184 Misc. 775 — business area in residence zone; Marshall v. Salt Lake City, 105 Utah 111, 126-127 — business district in residence zone; Higbee v. Chicago, B. & Q. R. R. Co., 235 Wis. 91, 98-99 — railroad station in residence zone; see, also, Avery v. Village of La Grange, 381 Ill. 432, 442; Town of Marblehead v. Rosenthal, 316 Mass. 124, 126; Rathkopf, Law of Zoning and Planning [2d ed., 1949], p. 72 et seq.) Thus, the relevant inquiry is not whether the particular zoning under attack consists of areas fixed within larger areas of different use, but whether it was accomplished for the benefit of individual owners rather than pursuant to a comprehensive plan for the general welfare of the community.”
In Greenberg v. City of New Rochelle (206 Misc. 28, 32, 33, affd. 284 App. Div. 891) the question of spot zoning was considered. Mr. Justice Coyne, rendering the opinion for the lower court in a clear and comprehensive opinion, held in part as follows:
*155 “ Under this pronouncement of the Court of Appeals, clearly the scope of any inquiry by this court into the validity of the legislative enactment is limited and circumscribed. The burden rests upon the one assailing the ordinance to establish that the judgment of the legislative body was arbitrary and unreasonable. This cardinal principle is now firmly entrenched in the law. The classification of property and the uses thereof is a matter of legislative and not judicial action, and the court will not intervene and substitute its judgment for that of the legislative body where such classification is fairly debatable. * * * The subject of ‘ spot zoning ’ was also considered in the Rodgers case (302 N. Y. 115, 123). There the court defined spot zoning as the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners (citing cases) \ The relevant inquiry in cases of alleged spot zoning is whether the zoning was accomplished for the benefit of the individual owner, rather than pursuant to a comprehensive plan for the general welfare of the community. The expression ‘ spot zoning ’ does not bear magical import. An ordinance is not to be labeled spot zoning merely because it singles out and affects one parcel of property. The true test is whether the change is part of a well-considered and comprehensive plan. (Shepard v. Village of Skaneateles, 300 N. Y. 115.) ”
In Hermann v. Incorporated Vil. of East Hills (104 N. Y. S. 2d 592) the court held that an amendatory village zoning ordinance creating a light industrial district in the corner of a village adjacent to railroad tracks and turnpike was not void as creating illegal spot zoning, since the location of the district and the limitations in the ordinance on the use of the territory clearly indicated that the ordinance was enacted pursuant to a comprehensive plan for the general welfare of the village. This case was affirmed (279 App. Div. 753).
In Penataquit Assn. v. Furman (283 App. Div. 875) the Appellate Division, Second Department, held that if there was any basis which justified the granting of the change of zone, plaintiffs have not sustained the burden of showing arbitrariness.
In Matter of Wulfsohn v. Burden (241 N. Y. 288, 298, supra), the Court of Appeals at pages 298 and 299 said: ‘‘ Being designed to promote public convenience or general prosperity as well as public health, public morals, or public safety the validity of a police regulation must depend upon the circumstances of each case and the character of the regulation for the *156 purpose of determining whether it is arbitrary or reasonable and whether really designed to accomplish a legitimate public purpose. (C., B. & Q. Ry. Co. v. Drainage Commrs., 200 U. S. 561.) The field of regulation constantly widens into new regions. The question (of regulation) in a broad and definite sense is one of degree. Changing economic conditions, temporary or permanent, may make necessary or beneficial the right of public regulation. (People ex rel. Durham Realty Corp. v. La Fetra, 230 N. Y. 429; affd., in principle 257 U. S. 665.) While the validity of police regulation certainly is not to be rested simply upon popular opinion it has been said that it has been ‘ put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare. ’ (Noble State Bank v. Haskell, 219 U. S. 104, 575.) ”
In the Matter of Kilgus v. Board of Estimate of City of N. Y. (308 N. Y. 620, 627) the court laid down the following rules: “ Because of the strict limitation on the power of courts to review the findings of administrative bodies, we have felt impelled to declare (Matter of Weekes v. O’Connell [304 N. Y. 259, 266]): ‘ Their findings being subject only to limited judicial review, administrative agencies should ever be mindful of the heavy responsibility thereby imposed, and that responsibility should dictate conscientious and painstaking assessment of the evidence presented.’ ”
Measured by these standards, it is obvious that the plaintiff has failed to establish that the planning commission’s action was arbitrary, capricious or that it constituted spot zoning. In the light of the settled principles of law applicable to the facts in this case, there can be no question as to the legality of their action.
If any doubt existed concerning the legality of this zoning resolution, after studying the facts in this case and the photographs submitted, it was dispelled by several personal visits to the property involved and the surrounding locale. In the past decade, Biverdale has experienced a phenomenal growth, the extent and force of which has not yet abated. An enlightened planning commission was well within its province to anticipate the growth and change in such a locality. The evidence here shows that the zoning laws have been amended on numerous occasions in Biverdale. The growth of every community follows a definite pattern, and is best exemplified by the growth in our suburban areas, during recent years. Provision is always made for the needs and convenience of its residents. A conveniently located shopping center is regarded as a neces *157 sity. The planning commission, anticipated the influx of residents in the area and intended to provide additional shopping areas.
The local retail district on the east side of Riverdale Avenue extends from 236th to 238th Streets, while on the west side of Riverdale Avenue (the side involved in this litigation) the local retail district ends abruptly 104 feet away from the corner of 238th Street. In the immediate area there exists a small retail shopping area containing stores of various kinds. There are no vacancies on either side of Riverdale Avenue between 236th and 238th Streets. There are stores on 236th Street, west of Riverdale Avenue and also on 238th Street east of Riverdale Avenue. The apartment houses which were recently built in this area or which are now in the process of construction require additional shopping space. The defendants ’ vacant land is immediately contiguous to this local retail district. The zoning resolution affects property of the defendant Zelnik and also the property of the other individual defendants. The line previously drawn, 104 feet south of 238th Street, is near the middle of the block. The desire of the planning commission to provide additional retail area by extending the line to its natural and logical place, to wit the corner, can hardly be said to be arbitrary, illegal and unnatural. The plaintiff asserts, •as part of its grievance, that when their apartment house was built many years ago it relied upon the protection of this 150 feet of property south of its property, and on the corner of 238th Street which belongs to the defendants. The plaintiff has .no inherent right to the status quo in this neighborhood and the rights of the public are paramount to the rights of the plaintiff (Rathkopf on Law of Zoning and Planning [2d ed.], p. 30 of Supplement and Digest; Shepard v. Village of Skaneateles, 300 N. Y. 115, supra and cases cited). Moreover, proximity to a convenient shopping area does not always depreciate the value of the neighboring property. It is questionable whether, the value of this property will be in anyway affected by this rezoning.
Thus, the planning commission concluded by its resolution ‘ ‘ that the proposed amendment is a minor expansion of a small existing local shopping area and is designed to accommodate the expanding residential population of the Riverdale area ’ ’. The commission adopted the resolution unanimously and the Board of Estimate did likewise.
The law is clear that “ The general presumption is that no official or person acting under an oath of office will do anything contrary to his official duty, or omit anything which his official *158 duty required to be done.” (Matter of Marcellus, 165 N. Y. 70, 77; see, also, Stephen on Evidence, art. 101; Matter of Whitman, 225 N. Y. 1, 9.)
Applying the law to the facts in this case the conclusion is irresistible that the zoning resolution was in all respects - properly passed to aid and benefit the neighborhood and was designed to promote a comprehensive plan of zoning.
Accordingly, the motion for summary judgment is granted. Settle order on notice.