# CIRCUIT COURT OF THE CITY OF RICHMOND

Bonnie Baker
and Floyd Avenue Tenants Assoc.

v.

Virginia Commonwealth
University et al.

Case No. D-7702

BY JUDGE ALEX H. SANDS, JR.

January 9, 1975

This is a suit instituted by a group of residents of the 900 block of Floyd Avenue in the City of Richmond against Virginia Commonwealth University (VCU) and W. Carter Childress, Treasurer of Virginia Commonwealth University, seeking to recover benefits claimed due them under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1972. § 25–235, et seq. of the Va. Code of 1950, as amended.

The case is now before the court upon defendants' demurrer.

The grounds assigned in support of the demurrer are three in number:

1. That the plaintiffs do not qualify as "displaced persons" in contemplation of the Act.

2. That plaintiffs may not be joined as plaintiffs in the same action.

3. That a number of plaintiffs, even if qualifying as "displaced persons" (which is denied) do not qualify for "supplemental rental assistance" under the terms of the Act.

### Demurrer Considered

It is perfectly apparent from the face of the pleadings that the leasehold interests of the plaintiffs are entirely different, and the entitlement or lack thereof which they might have under the several sections of the

act must be determined by wholly different sets of criteria. Some may, while others may not, qualify as "displaced persons," and even those who may so qualify may be entitled to different benefits, depending upon not only the status of their leasehold interests, but also upon other factual situations to be developed by the evidence as, for example, the time at which "institutions of negotiations" occurred as to each plaintiff. While a court of equity will mould its pleadings with regard to substance rather than to form and will entertain joinder by multiple plaintiffs where the rights sought to be protected involve the same facts, yet where the bases of the rights asserted are different, the claims of the parties cannot be joined in the same unit. *See, Brown v. Bedford City Land, etc.*, 91 Va. 31 (1895).

In the instant case, several different categories of claimants appear to be involved having some bases for their claims in common but some entirely different bases depending, as above stated, upon the nature of the leasehold interest in each particular case.

Defendants' demurrer will be sustained upon the ground above.

As to the other two grounds, i.e., whether the individual plaintiff involved qualifies as a "displaced person" and for what category of relief he or she may qualify, these are matters which cannot be reached by demurrer but which will depend upon evidence introduced by each individual claimant.

## Conclusion

For the above reasons, the demurrer will be sustained upon the ground of misjoinder of parties plaintiff. In view of Code § 8-96, however, which prevents the suit abating because of misjoinder, the court, upon advice of counsel for plaintiffs as to which party counsel desire to remain as the party plaintiff, the court will enter an appropriate order dropping all other parties plaintiff in accord with the provisions of § 8–96.

### August 22, 1975

This case seeks a declaratory judgment as to the rights of the parties involved under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1972 (§ 25–235, *et seq.*, of the Code of Virginia, 1950, as amended).

*Facts*

The three parties plaintiff, Bonnie Baker (Thomas), Rhonda J. Morgan, and Angela G. Mize, all students at VCU in the fall of 1974, were occupying 903 Floyd Avenue in the City of Richmond as month-to-month tenants. Baker's occupancy had begun in January, 1972, Morgan's occupancy as a tenant in her own name began on August 1, 1974, although she had been occupying an apartment under lease by a friend prior to such date, and Mize's occupancy began in September, 1974. All three plaintiffs were required to vacate the premises upon the acquisition of the property by VCU for demolition purposes preparatory to the construction of VCU buildings on the site thereof.

*Broad Question in Issue*

The broad question in issue is whether all or any of the parties plaintiff qualify for benefits under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1972.

The Uniform Relocation Assistance and Real Property Acquisition Act of 1972, hereinafter referred to as the Act, establishes a uniform policy for the treatment of "persons displaced as a result of" programs or projects involving the acquisition of real property by a state agency for any state program or project. See § 25-237(a). It provides for three types of assistance to such persons: (1) payments for moving and relocation assistance, see § 25–239; (2) relocation assistance advisory services, which includes assurances of the availability of replacement housing prior to displacement, see § 25–242; and (3) supplemental housing payments up to $15,000 to enable owner occupants who had actually occupied the premises at least 180 days prior to the initiation of negotiations to acquire comparable replacement housing, see § 25-240, and up to $4,000 to enable non-owner occupants who had actually occupied the premises at least 90 days prior to the initiation of negotiations to lease or purchase comparable replacement housing, see § 25–241.

*Specific Questions Presented*

1. Do month-to-month tenants qualify as "displaced persons" within the meaning of Act?

2. If they do so qualify, do they lose their qualification if their occupancy of the premises occurs after the initiation of negotiations for acquisition of the property?

3. What constitutes "initiation of negotiations" in contemplation of the Act?

4. Does the question of notice of initiation of negotiations affect the answer to question 2, *supra*?

### Do Plaintiffs Qualify As "Displaced Persons"?

This appears to be the threshold question confronting us and is also, so far as counsel or the Court have been able to ascertain, one of first impression.[1]

A "displaced person" in contemplation of the Act is clearly defined in Code §§ 25–238(c) and 25–245 thus:

> *"Displaced person"* means any person who, on or after April ten, nineteen hundred seventy-two, moves from real property, or moves his personal property from real property, as a result of the acquisition of such real property, in whole or in part, or as the result of the written order of an acquiring State agency to vacate real property, for any program or project undertaken by a State agency . . . .
>
> A person who moves or discontinues his business or moves other personal property, or moves from his dwelling on or after April ten, nineteen hundred seventy-two as the direct result of building or other similar code enforcement activities, or a program of rehabilitation or demolition of buildings conducted pursuant to a governmental program, is deemed to be a displaced person for the purposes of this chapter. (1972, c. 738.)

It is further clear that insofar as relief under §§ 25–239 and 25–242 is concerned, these are the *only* three conditions which must be met to establish entitlement, *i.e.*, that the person seeking benefits (a) has moved from the real estate in question, (b) that the move is the result of either acquisition of the property by the State or of a written order of the acquiring State agency to vacate the property, and (c) that the acquisition of the property by the State is part and parcel of a State program or project. Plaintiffs meet these three conditions. It is further true that the State, in adopting the federal act almost verbatim, is

---

[1] Plaintiffs rely upon *Tullock v. State Highway Commission of Mo.*, 507 F.2d 712 (8th Cir. 1974), but this case is of little help for while it involved a month-to-month tenancy, the Court does not address itself to the point here in issue.

presumed to be cognizant of the legislative history preceding the adoption of the federal statute. A review of this legislative history convinces the Court that it was definitely not the intention of the federal adopting authority to exclude month-to-month tenants from the benefits of the act *merely* because of the nature of their tenancy.

While the Court agrees with the Attorney General that in all probability it was never the intent of the legislature to specifically include among the beneficiaries of the Act college students, the financial posture of the great majority of whom is totally foreign to that of the disadvantaged persons who are the intended recipients of benefits under the Act, yet where the legislature has so worded the statute as to include students under the umbrella of the State's beneficence, it is not for the Court to circumscribe the class of beneficiaries plainly spelled out by the statute with restrictions which the legislature has not seen fit to impose. Nor does the Court have the power to superimpose upon the statutory language limitations and exceptions in order to exclude from coverage persons who the Court might feel are not proper recipients of benefits. This is strictly a legislative function.

For these reasons, it is held that tenants holding under a month-to-month lease may qualify as "displaced persons" if they meet the above-enumerated requirements of § 25–238(c) and are not barred from inclusion under the Act merely because of the nature of their leasehold interest.

### Initiation of Negotiations

The term "initiation of negotiations" is not defined anywhere in the Act, but its meaning is essential to a determination of benefits conferred under the provisions of § 25–240[2] and § 25-241 of the Code. The word "negotiation" admits of easy definition being defined by Black's Law Dictionary 1188 (Rev. 4th ed. 1958) as "the deliberation, discussion, or conference upon the terms of a proposed agreement; the act of settling or arranging the terms and conditions of a bargain, sale, or other business transaction . . . ." *See, Massie v. Dudley*, 173 Va. 42 (1939).

The interpretation of the term "initiation" appears to be the point of disagreement between the parties to this suit, defendant contending that the use of the word "initiation" implies the *beginning* of *any*

---

[2] Section 25–240 is not involved in the case at bar.

discussions relating to acquisition, while plaintiffs contend that the communication of an offer was the earliest point at which "initiation of negotiations" could be considered as having occurred. The date of the former was March 21, 1974, and of the latter, July 15, 1974. Plaintiffs' position on this point is wholly untenable. Case law has defined the word "initiate" to mean an *introductory* step, a *first* move, a beginning or a start. *Fieldston Garden Apartments v. City of New York*, 145 N.Y.S.2d 907; 21A *Words & Phrases*, p. 55, *et seq*. In *Horras v. Williams*, 132 S.E.2d 68 (Ga.), where a party filed an application for rezoning and immediately withdrew it before any action of any character was had thereon, he was held to have "initiated action" in contemplation of a statute providing that a landowner could not initiate action to amend a zoning map more than once every twelve months.

It is, accordingly, held that "initiation of negotiations" for the acquisition of 903 Floyd Avenue occurred on March 21, 1974. Both Mize and Morgan commenced their tenancies, therefore, *after* the date upon which negotiations had been initiated.

## Effect of Knowledge of Acquisition

Knowledge upon the part of a tenant of proposed acquisition of the property acquired *after* the creation of the tenancy would have no effect upon the rights of the tenant under the Act. What, however, is the situation where the tenant has knowledge, at the time that his tenancy begins, that negotiations are under way by the State to take over the property? That no authority appears to exist bearing on this question is, doubtless, because the answer is so plain. Obviously, the Act, even under its most liberal interpretation, never was intended to protect a person who intentionally assumed a leasehold interest in property which to his knowledge had, prior to the creation of his leasehold interest therein, been marked for acquisition by the State.

The evidence in this case establishes to the Court's satisfaction that at the time the plaintiffs, Mize and Morgan, commenced their tenancies and occupancy of their apartments, not only had initiation of negotiations taken place between seller and purchaser, but they both had knowledge that negotiations for the sale of the property were under way and that the property either had been, or would shortly, be sold.

## *Conclusion*

For the above reasons, the Court finds that neither the plaintiff Mize nor the plaintiff Morgan are entitled to any benefits under the Act.

As to the plaintiff Baker, her tenancy began in January, 1972, without knowledge that any acquisition plans for 903 Floyd Avenue were even under consideration. Under such circumstances, she is eligible for benefits under §§ 25–239, 25–241, and 25–242 of the Code.