Jacob Ark, J.
This is an article 78 proceeding to annul and set aside a variance granted by the respondents, constituting the Board of Appeals of the Town of Brighton, New York, to the applicants, Janis B. Maxion and William J. Maxion, to erect a bam on their property at 1463 Elmwood Avenue in the Town of Brighton.
Admittedly, the applicants raise and sell racing horses as a commercial venture on a 35-acre parcel of land on which they grow hay to feed the horses and maintain a permanent pasture. Occasionally, they raise horses for others and buy horses.
There is no direct testimony concerning the existing buildings on this acreage, although Mr. Maxion in his testimony referred to an old barn, and counsel for the respondents in their brief stated that the applicants reside in a dwelling on the premises. A photograph submitted with respondents ’ return indicates that there are several structures on the premises in addition to those mentioned.
There is nothing before the court relating to the measurements of the proposed barn, but some idea of its size may be gathered from Mr. Maxion’s testimony that it would be for a dozen horses, and that: ‘ ‘ The main reason for this barn is just a big, open area so that we can train horses in the winter and in the wet times. We fall so far behind the horses that come off Long Island that have weather conditions where they can get on their land, and we can’t do it, and we just need a big open area to be able to work the horses and get them in condition for the racing.” In the respondents’ brief it is stated that the “ barn would be used as an indoor training area ”.
The premises are in a Class B Residential District (§ 42-26A) which permits principal uses for structures as regulated in Class A Residential Districts (§ 42-25A), which are the following:
“ A. Permitted principal uses or structures.
“ (1) One (1) single-family dwelling.
“ (2) Church or similar place of worship, parish house, convent, rectory or parsonage.
“ (3) Public or private, nonprofit, pre-kindergarten, kindergarten, elementary, secondary school or college, accredited by the New York State Department of Education.
“ (4) Fire station.
“ (5) Private golf course operated by a nonprofit, membership corporation, exclusively for members and guests, including club facilities, pro shop or accessory dining room with or without bar facilities, by special permit of the Board of Appeals.
“ (6) Club swimming pool (See Part 6).”
*249 Permitted accessory uses or structures in Class B Residential District (and the keeping of not more than two roomers or boarders) (§ 42-26B) are those permitted and regulated in Class A Residential Districts (§ 42-25B), which require no enumeration.
It is undisputed that the operations conducted by the applicants are a nonconforming use as they do not come within the uses permitted in the Class B Residential District. The respondents maintain, however, that two principal uses exist on this one parcel of land, consisting of the applicants’ residence and the operation of a farm. No claim is made that the proposed structure would be an accessory to the residence.
The respondents place great emphasis upon the fact that buildings are necessary, in any farm operation of the nature conducted by the applicants, for the storage of equipment, feed and the stabling of horses, and therefore are used in conjunction with the conduct of .the farm, and would be a reasonable accessory to the principal use of the land as a farm.
In support of their position the respondents rely upon Matter of Great South Bay Marine Corp. v. Norton (58 N. Y. S. 2d 172, affd. 272 App. Div. 1069) where the court held that the. erection of a building in conjunction with the use of an existing airport was a reasonable and natural accessory to that use.
An examination of the record on appeal discloses that the petitioner maintained an airport in the Village of Babylon prior to the year 1939. Under the zoning ordinance it was a permitted use in the C Residence District where it was located (§ 601). In that year the ordinance was amended by providing that such a facility required a permit from the Board of Appeals as a special exception. The application for the permit to erect the additional building for the maintenance and repair of airplanes was made several years after the effective date of the amendment and was denied by the Board of Appeals.
A subdivision of section 601 specifically providing for ‘ ‘ Accessory use on the same lot with and customarily incidental to any of above permitted uses ” (subd. 7) was unchanged by the amendment. It is clear that at no time was there involved a nonconforming use, unlike the instant case, but a use that was ‘ ‘ permissible only when specially, exceptionally and affirmatively authorized by the board (Matter of Lemir Realty Corp. v. Larkin, 11 N Y 2d 20, 24.) A special exception allows an owner to put his property to a use which the ordinance expressly permits, with the reservation to grant or deny by the body charged with this responsibility. (Matter of Mandis v. Gorski, 24 AD 2d 181, 186.)
*250 There is no provision in part 7, article XXVII, Nonconforming Use Regulations, for an accessory use, but only permits a limited enlargement or extension of a nonconforming structure or area in a commercial or industrial district (§ 42-93). The applicants are essentially in the business of breeding and selling horses and do not conduct a farm which is defined as “ the cultivation of soil for the raising or growing of crops or plants and the sale thereof ’ ’ under section 42-97, permitting its continuance in a residential district.
Anderson in his work on Zoning Law and Practice in New York State, discusses the point in question raised by the respondents.
“ § 11.02. agriculture. Agricultural uses have always been recognized as important to the community. Such uses are permitted, by most zoning regulations, to be established and maintained in single-family residential districts. Less commonly, agriculture is confined to districts of lower classification.
‘ ‘ Since these uses are permitted in residential districts, many ordinances define ‘ farm ’ in terms narrow enough to exclude related commercial enterprises, and impose limitations calculated to minimize the harm to residential land which might result from the odors and other incompatible features of agricultural use.”
“ § 11.04. animals. The approval of agricultural pursuits, reflected in the zoning ordinances which permit such uses in residential districts, does not include a general approval of raising or keeping animals in such districts. As indicated in a previous section [11.02], the definition of farming which is provided in most zoning ordinances is centered on the crop-raising aspect of agricultural use. The courts have declined to extend the meaning to include uses primarily devoted to animal husbandry.”
This text finds support in the authorities.
In Town of Mount Pleasant v. Van Tassell (7 Misc 2d 643, 644, affd. 6 A D 2d 880) the court said: “ ‘ Farming ’ as the term is generally understood, is the act or business of cultivating and using the land and the soil thereof for production of crops for the use of man and animals and incidental purposes. The incidental purposes may include animal husbandry, stock-raising or dairying. But the raising of pigs or other animals as a business * * * is not farming.” (Citing authorities.)
In Matter of Colasuonno v. Dassler (183 Misc. 904) the petitioner sought a permit for the erection of a chicken house in a residential district on the ground that his premises constituted a farm within the purview of the ordinance. The application was opposed on the ground that the intended use was virtually a *251 commercial enterprise. In sustaining the action of the Building Inspector in refusing to issue a permit, the court held (p. 906): “ The primary purpose of the residence district created by the Zoning Ordinance herein was to insure and promote a safe, comfortable and healthful atmosphere of family life, rather than the development of a commercial enterprise and the pursuit of pecuniary profit. (Matter of Wulfsohn v. Burden, 241 N. Y. 288; People v. Gold, 6 N. Y. S. 2d 264, 269.) ”
Not only do the applicants seek to increase their facilities for the operation of breeding horses, but the respondents found that it was necessary for them to place their barn close to the east property line ‘ ‘ in order that eventually other barns can be constructed in a manner architecturally suitable as well as suitable for the creation of a training track in connection with the breeding and stabling of horses ”. Although this statement finds questionable support in the testimony, it appears that a further expansion of the nonconforming use is envisioned.
In Matter of Harbison v. City of Buffalo (4 N Y 2d 553, 559-560) the court said:
“ It should be noted that even where the zoning authorities may not prohibit a prior nonconforming use, they may adopt regulations which restrict the right of the property owner to enlarge or extend the use or to rebuild or make alterations to the structures on the property (Matter of Koeber v. Bedell, 280 N. Y. 692; Matter of Cordes v. Moore, 308 N. Y. 761; Marcus v. Village of Mamaroneck, 283 N. Y. 325; Town of Hempstead v. Goldblatt, 4 A D 2d 970, motion for leave to appeal denied 4 N Y 2d 674; see Matter of Crossroads Recreation v. Broz, [4 N Y 2d 39], supra).
‘‘ As these cases indicate, our approach to the problem of permissible restrictions on nonconforming uses has recognized that, while the benefit accruing to the public in terms of more complete and effective zoning does not justify the immediate destruction of substantial businesses or structures developed or built prior to the ordinance (People v. Miller, [304 N. Y. 105], supra, p. 108), the policy of zoning embraces the concept of the ultimate elimination of nonconforming uses, and thus the courts favor reasonable restriction of them. ’ ’
The Zoning Ordinance of the Town of Brighton gives expression to the thought expressed in Harbison (supra), in that it fails to reserve to the Board of Appeals the power to authorize the erection of a nonconforming building or other structure unless damaged or destroyed to the extent of 75% or more of its equalized assessed value or condemned and demolished (§ 42-95) (and it may permit the enlargement or extension by 25% in a commer *252 cial or industrial district [§ 42-93]). Otherwise, it is without power to permit the erection of a nonconforming building or structure, except that, under part 9, article XXXII it has the power to consider applications that concern adjacent nonconforming uses (§ 42-lllB[2]) and those that involve the right to continue or re-establish a nonconforming use in a building originally lawfully erected, when denied by the provisions of part 7 of the ordinance (§ 42-lllB[3]). Neither of these situations is present here.
The first essential for a variance under the landmark case of Matter of Otto v. Steinhilber (282 N. Y. 71, 76) is that “ the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone ’ ’. There is a total failure of proof in this respect and a discussion of the other requisites mandated by this authority would serve no useful purpose.
In the Matter of Crossroads Recreation v. Broz (4 N Y 2d 39), the petitioner sought to tear down an existing gasoline station which was a nonconforming use and erect instead a modern and much larger establishment, contending that there was no conforming use to which the property could be put other than a gasoline station.
The court confirmed the denial of the variance by the Board of Appeals on the ground that the petitioners had the burden of proving that the property in question could not, if used for an allowed purpose, yield a reasonable return, and that such failure of proof was deemed fatal to the petitioners ’ claim that the gasoline station as it presently existed was not yielding a reasonable return, thereby failing to establish a requisite hardship to warrant the granting of a variance.
The decision of the Zoning Board of Appeals of the Town of Brighton is annulled and the variance is set aside.